UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-20630-CR-LENARD/GOODMAN

UNITED STATES OF AMERICA

vs.

LOUIS N. GALLO, III,

    Defendant.

_____/

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S**

**MOTON FOR RULE 17(c)(1) SUBPOENA**

Defendant Louis N. Gallo, III ("Gallo") has moved for the issuance of a Rule 17(c)(1) subpoena [ECF No. 253], which the District Court referred to me. [ECF No. 285]. Gallo seeks a subpoena to the court-appointed Receiver for Commodities Online, LLC and Commodities Online Management, LLC (collectively, "Commodities"), defendants in *SEC v. Commodities Online, et al.*, No. 11-Civ-60702-MGC. Specifically, Gallo wants statements to the Receiver given by three cooperating defendants (who have all entered guilty pleas, have been sentenced, and are expected to testify in this case as Government witnesses). The Undersigned reviewed the motion, the Government's response [ECF No. 263], and the Receiver's response [ECF No. 295]. For the reasons outlined below, Gallo's motion is **denied without prejudice**.

I.    BACKGROUND

In a civil lawsuit filed by the Securities and Exchange Commission, United States District Judge Patricia A. Seitz appointed David S. Mandel as Receiver for

Commodities. The Receiver instructed his counsel to interview various Commodities personnel in order to identify improperly misappropriated or transferred monies. [ECF No. 295, p. 1]. The Receiver possesses interview notes made by his counsel and or his counsel's agents. Based on his investigation, the Receiver filed a lawsuit against Gallo and others to recover investor funds. *See Mandel v. Gallo, et al.*, No. 11-Civ-23620-MGC. That lawsuit, however, is stayed, to be reopened thirty days after resolution of Gallo's criminal case.

The criminal case against Gallo was filed in 2012. According to the Government, Gallo and others conspired to defraud investors in Commodities by making materially false and fraudulent representations to investors who were solicited to invest in commodity contracts. [ECF No. 3].

Gallo now seeks statements made by certain Commodities personnel to the Receiver's attorneys when they were interviewed: Tim Josselson (COO); Kathryn Josselson (Comptroller); and Robert Lananna (Director of Sales). [ECF Nos. 253, p. 2; 253-1]. All three have entered into plea agreements and pled guilty and are likely to testify as Government witnesses. According to Gallo, in their respective factual proffers, all three agreed that Commodities did not in fact have pre-sold commodity contracts, as it represented to investors. Thus, Gallo contends that their statements to the Receiver "will have evidentiary value because the statements **may** contain" "impeachment evidence **if** any of these individuals claimed that the company offered legitimate

investment opportunities to the investing public during the course of their employment or *if* they believed the investment opportunities were legitimate." [*Id.* at pp. 3-5 (emphasis added)].

The Government opposes Gallo's motion for the following primary reasons: (1) the request does not satisfy Rule 17's criteria because it is a general discovery request, a fishing expedition, instead of one seeking specific evidence; (2) the Receiver has indicated that the interview notes are protected by the attorney-client privilege and work product doctrine; and (3) Rule 17(h), which states that "no party may subpoena a statement of a witness or of a prospective witness under this rule," prohibits Gallo's proposed subpoena.

Because the Government asserted objections which the *Receiver* presumably might raise, the Undersigned offered the Receiver the opportunity to submit a memorandum, and he did so. [ECF No. 287].

The Receiver opposed Gallo's request on several grounds: (1) the interview notes are protected by both the attorney-client privilege and work product doctrine; (2) the interview notes are not "statements" by the witnesses because they are not verbatim statements written by them, are not transcripts of recorded statements, and were not shown to or adopted by the witnesses; (3) Gallo has no need for the "factual" information in the notes because he participated in the Ponzi scheme and has knowledge of the facts, the facts underlying the Receiver's claims in the civil lawsuit

3

differ from those relevant to the criminal charges, and the facts are available from other sources; (4) the request is tantamount to an impermissible fishing expedition under Rule 17(c); (5) the interview notes are not admissible; and (6) the impeachment value of the notes is minimal, if not non-existent, because the notes are not verbatim statements by the witnesses.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 17(b) governs the issuance of subpoenas at an indigent defendant's request. Under Rule 17(b), a court has broad discretion to weigh "numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena." *United States v. Brown*, No. 11-60285, 2013 WL 1624205, at *3 (S.D. Fla. Apr. 15, 2013) (quoting *United States v. Moudy*, 462 F.2d 694, 697–98 (5th Cir. 1972)). Rule 17(c)(1), in turn, sets forth the standard for subpoenas *duces tecum* in a criminal case and provides that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17 "was not intended to provide a means of discovery for criminal cases[;] . . . its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (internal citations omitted).

In evaluating whether a Rule 17(c) subpoena should be issued, the *Nixon* Court referred favorably to the test set forth in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952). Under the *Iozia* test, the moving party must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. 699-700 (internal citations omitted). Based on this test, the Supreme Court noted that the moving party must satisfy three requirements for a Rule 17(c)(1) subpoena: (1) relevancy; (2) admissibility; and (3) specificity. *Brown*, 2013 WL 1624205, at *4 (citing *Nixon*, 418 U.S. at 701).

III.   ANALYSIS

   A. **Why Gallo's Request is Denied**

Gallo's request is problematic on several levels.

First, Gallo's request is based on speculation about what he thinks are in the Receiver's files and what those documents might contain. Gallo's motion presumes that the Receiver has "statements" of the three witnesses, and does not address the notion that the documents might merely be *notes* of interviews with witnesses, as opposed to statements by the witnesses.

5

Moreover, Gallo's motion, whether addressing actual statements or interview notes, is premised on the notion that the documents "may" contain impeachment evidence. It is, therefore, a classic illustration of the often-criticized fishing expedition for what is actually a prohibited discovery request. Gallo has not suggested that any of the witnesses have in fact advised the Government or the Receiver that the investment opportunities were in fact legitimate. To the contrary, the motion is expressly conditioned on the notion that the notes contain statements that *might* constitute impeachment if the witnesses said those sorts of things.

Second, even if the notes did contain that type of information, the interview notes are not verbatim witness statements -- they are classic work product notes of the Receiver's counsel and agents.[1] Although Gallo is seeking the notes for his criminal trial, he is *also* a civil litigant against the Receiver and he has not explained why he would be entitled to documents protected by the work product doctrine. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (explaining that notes and memoranda from an attorney from a witness interview are "opinion work product entitled to almost

---

[1] While the Receiver and the Government have also asserted that the interview notes are also protected by the attorney-client privilege, the Undersigned cannot make that determination based on the record before him. For instance, the Undersigned has not reviewed the interview notes *in camera*. Nor has the Receiver submitted an affidavit to support his attorney-client privilege assertion. To be clear, the Undersigned is not saying that the interview notes may not also be protected by the attorney-client privilege. Deeming the notes to be work product is a conclusion which the Undersigned reaches based on the Receiver's representations about the circumstances underlying the creation of the notes. That same conclusion cannot be made so readily about the attorney-client privilege claim, however.

absolute immunity"). Nor has Gallo attempted to demonstrate the undue hardship or substantial need which might overcome the notes' work product status. He has not, for example, argued that he or his counsel attempted to interview the three witnesses but that they refused to speak with him, or that the prosecutor instructed the witnesses not to answer his counsel's questions.

Finally, Gallo's stated theory is premised on the assumption that the Receiver's interview notes (assuming they contain the information he suspects) can be used to impeach the witnesses. But "generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701-02. And Gallo's assumption is far from clear, as it is difficult to imagine how his counsel could at the criminal trial directly impeach any one of the witnesses with a non-verbatim, non-adopted witness summary prepared by *another* and not shown to the witness. *See generally Williamson v. Moore,* 221 F.3d 1177, 1182 (11th Cir. 2002) (applying Florida law in a habeas case challenging a first-degree murder conviction and noting that "non-verbatim, non-adopted witness statements were not admissible at trial").[2]

---

[2] Although *Williamson* involved Florida state evidence law, the Eleventh Circuit also cited federal law to support its conclusion that the statements were not admissible at trial as impeachment evidence. In particular, the appellate court cited *Hickman v. Taylor*, 329 U.S. 495 (1947), for the proposition that "transcribed notes of a witness interview contain a real risk of inaccuracy and untrustworthiness." *Williamson*, 221 F.3d at 1183.

### B. Why Gallo's Request is Being Denied Without Prejudice

The Receiver and the Government assert that the Receiver's interview notes are protected by the work product doctrine and the attorney-client privilege and, as such, Gallo's motion should be denied. But regardless of whether the Government has standing to raise these arguments on behalf of the Receiver, two sentences in the Government's response -- which appear fundamentally inconsistent with the Government's argument and with the Receiver's response -- give the Undersigned pause in denying Gallo's motion with prejudice.

In particular, the Government represented that it has "obtained at least one typed rough, not verbatim, summary of an interview of Lananna by the Receiver's staff," and that it will provide "any excerpts of the interview that may be deemed possible impeachment as described in defendant Gallo's motion." [ECF No. 263, pp. 5-6]. These two simple and comparatively brief sentences, which appear almost as an afterthought in the Government's brief, generate several thorny questions as to the Government's possession of the interview notes and their impeachment value:

If the Receiver's counsel's interview notes of Lananna are protected by the work product doctrine or the attorney-client privilege (as the Government and the Receiver assert), then how did the **United States Attorney's Office** obtain a copy? And wouldn't the Government's possession of the Receiver's work product/privileged interview notes

at least suggest that these protections have been waived?[3] In addition to the Government, does anyone else have a copy of the Lananna interview notes, or has anyone else read them or had access to them? Has the Government or anyone else read or had access to the *other* two witness summaries at issue in Gallo's motion?

Moving on from the possession aspect to the use of the interview notes, if the Lananna witness interview notes are not a verbatim version of Lananna's statements and Lananna has not adopted them, then how could they be used for impeachment? And why would the Government say it **will** provide the interview notes if they *may* be deemed *possible* impeachment? That *unequivocal* representation seemingly conflicts with the Receiver's argument (and the case law) that a non-adopted summary of a witness's statement cannot be used to impeach a witness. Finally, if the Government contends (which it does) that the interview notes are protected by the attorney-client privilege or

---

[3]   Neither the Government nor the Receiver discussed the circumstances surrounding the Government's possession of the interview notes. The Government's possession of the Receiver's work product interview notes may demonstrate the existence of a waiver. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 307 (6th Cir. 2002) (rejecting argument that selective waiver of work product exception could be permitted when the recipients of the voluntary disclosures were government agencies). *See generally JTR Enters., LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts and Quartz Crystals*, 297 F.R.D. 522, 530-32 (S.D. Fla. 2013) (citing *In re Columbia/HCA Healthcare* for rule rejecting selective waiver theory and granting motion to compel entire sworn statement after party voluntarily disclosed certain substantive portions of it).

the work product doctrine, then why would it *agree* to produce a privileged or work product document?[4]

These questions have not been answered and they cannot be analyzed by the Undersigned here either, as the parties have not provided the information upon which a substantive assessment can be based.

But because Gallo's motion is based on speculation, appears to be an impermissible fishing expedition, and does not now meet the standards for a Rule 17 subpoena, the Undersigned will deny it, albeit without prejudice. If the Government or the Receiver want to eliminate the possibility that Gallo will refile his motion, then they may want to give Gallo the answers to the questions raised herein.[5]

---

[4] The Lananna interview notes which the Government now possesses, through circumstances not disclosed, could arguably be *Brady* material. The Undersigned takes no position on that possibility and is not stating or even implying that the notes would, or could, be *Brady* material.

[5] This assumes that the answers will be helpful to the positions taken by the Government and the Receiver.

## IV. CONCLUSION

For the reasons set forth above, Gallo's motion is denied without prejudice.

**DONE AND ORDERED** in Chambers, at Miami, Florida, May 5, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Joan A. Lenard
All counsel of record