UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY PG D.C.

JAN 25 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES

v.                                          1:12-CR-20630-JAL

LOUIS N. GALLO III

I, Louis N. Gallo, pro se, file the instant reply to the Government's Response to my Motion for Compassionate Release to reply to the Government's assertions and respectfully request a reduction of my sentence to time-served, or, in the alternative, to a modified sentence to include home confinement for the duration of my statutory sentence.

I submit that there are extraordinary and compelling reasons that warrant a reduction in my sentence, specifically: (A) the growing Covid-19 pandemic, which has made my sentence much more punitive than intended; (B) my medical conditions, including Obesity, which render me vulnerable to serious illness or death if reinfected with Covid-19; (C) my conscientious attempts at rehabilitation; and (D) the 18 USC 3553 (a) factors as applied to my particular case.

## FACTUAL BACKGROUND

On October 16, 2014, this Court sentenced me to 168 months of incarceration for violating 18 USC 1349. I am now 51 years old and have been in custody for almost 9 years. I have served more than 73% of my statutory sentence and am eligible for home detention on March 24, 2023. This calculation is erroneously cited by the Government as 69%, but I have served 105 month of my 143 month statutory sentence and 105/143 = 73%.

All of the circumstances regarding my crimes were known to the Court at the time of sentencing.

In my Motion, I explained to the Court that FCI Fort Dix had undergone a wave of the virus that swept through Fort Dix Minimum Security Camp (the "Camp") where I am housed. I tested positive for Covid-19 on April 22, 2020. I further outlined the second wave that inundated FCI Fort Dix starting in late September as a result of transfers to Fort Dix from FCI Elkton, where men had died from the virus. That wave peaked in late November with more than 350 inmates tested positive.

Since my Motion was filed, there has been a third and even more frightening wave of the Coronavirus at both the FCI and the Camp. The result was a peak of 900 men sick at the FCI, for a total of more than 1400 sick in the last two months. More than half of the incarcerated men at the facility have been swept up in the pandemic. Similarly, Sixty-Five of the 136 men housed in the Camp are currently sick and quarantined at the Camp. Two men, Juan Rodriguez and Myron Crosby have been hospitalized for more than a week. There are so many staff members sick at Fort Dix, they are forced to house the quarantined men from the Camp in the Camp itself, not in a separate building. Two men of those currently sick, Damon Nelson, and William Cook also tested positive in April of 2020. The fear of reinfection at the Camp, where the Warden admits "social distancing is not possible" is palpable.

1

ARGUMENT

(A) THE PANDEMIC AT FORT DIX

For the last ten months, I have been serving my sentence in a facility that at three different times has been overwhelmed by the pandemic. When the Coronavirus first hit the Camp, I was moved along with 61 other men into a quarantine, subject to a list from the Bureau of Prisons headquarters. I was asked to sign Home Confinement Release papers and my home was inspected for suitability by Probation Officer Blaire on April 30, 2020. After becoming infected with the virus and spending 63 days in a building lacking basic infrastructure, I was placed back in the general population of the Camp.

I watched as the virus overcame the Low Security facility in October and November. My greatest fears are being realized as Covid-19 is back in the Camp again, to date infecting half of the men here. It is pure luck that no one here has died yet. I pray that I won't be infected.

These conditions are much worse than the Court could have anticipated at the time of sentencing. While once thought to be a relatively simple virus, Covid-19 is proving to be much more frightening. Already there is a second, more contagious variation of the virus diagnosed throughout the United States. Jails and prisons are among the most dangerous places to be during an epidemic because they create the ideal environment for transmission of contagious diseases in a densely populated, confined living space. The Camp is worse than most other prisons in that inmates are confined to dormitories, not individual low density cells. See Exhibits. These are not the conditions that were envisioned at the time the Court sentenced me to 168 months in prison. As a result of these harsh and unforeseen conditions, the direct result of the dangerous characteristics of the Covid-19 virus, a premium should be placed on the number of months that I have served.

Federal District Courts are taking notice. In a recent ruling granting compassionate release to a Fort Dix inmate who had served 51 months of a 120 month sentence for violations of 21 USC 841 and 846, the court noted that the "Covid numbers have reached problematic levels at the Camp where Mr. Belliard is being housed, proving that the BoP has been unable to protect the staff and inmates of Fort Dix." United States v. Belliard, No. 7:17-CR-00002-KMK-1 (SD NY Jan. 6, 2021)

On January 15, 2021, all members of Congress from the State of New Jersey penned a letter to DoJ Inspector General Michael Horowitz. Citing the BoP's "failure to control the outbreak' of Covid-19 at Fort Dix, the delegation asked for an investigation into, among other things, transfers to home confinement, as they were "gravely concerned that without additional oversight, BoP will continue to endanger the lives of the incarcerated individuals and staff at FCI Fort Dix."

(B) MY MEDICAL CONDITIONS

The Government concedes that "the Department of Justice acknowledges that obesity, which the CDC lists as a risk factor for severe disease, may qualify as an extraordinary and compelling reason for consideration of release under 18 USC 3582 (c)(1)(A)."

Even though the Government goes on to assert while "this is an immediate risk due to the pandemic, obesity is not a condition from which Gallo cannot recover." In order to fall from 'morbid obesity' to simply 'overweight,' I would need to lose over 100 pounds, despite the flippancy of the Government's assertion, that would be extremely difficult to do given the fact that we are only permitted three hours

2

of outdoor recreation per week. One of the complications the CDC recognizes as considerably more likely from morbid obesity if I were to be reinfected is death. Death is a condition I am very likely not to recover from.

Given the fact that I have alerted the medical staff at Fort Dix that I am experiencing lingering effects from the Coronavirus, and the growing volume of articles discussing the 'Long Haulers' with the disease, I may never truly recover from my first exposure.

(C) REHABILITATION

I have had one minor disciplinary report during the entirety of my 105 month incarceration almost six years ago. During my time in prison, I have completed dozens of programs totaling hundreds of hours. I have had a full time job since reporting to custody. I have been a model prisoner throughout my incarceration.

**I understand the** seriousness of my crimes and have done my best to prove that I respect the law and simply want to return to my wife and five minor boys after losing nine years without them while I still can. Indeed, in a letter to the Court dated September 8, 2014, I admitted my culpability, and apologized sincerely for my actions which led to my incarceration. My remorse was heartfelt then, and it would be impossible for me to impress the Court with how much I crave the opportunity to return to my family and live a simple, loving, honest life.

(D) SENTENCING GUIDELINES

The Government claims "Defendant's request for a sentence reduction should be denied because he has failed to demonstrate he merits release under the 3553 (a) factors." It goes on to state "this Court must deny a sentence reduction unless it determines the defendant 'is not a danger to the safety of any other person or to the community."

I have served my time at a Minimum Security Camp since 2016, proof that the Bureau of Prisons acknowledges that I am no threat to the community.

Further, as I stated in my Motion and above, I have been a model prisoner during my almost nine years of incarceration and I have completed scores of programs intended to help me become a better person. I have participated in religious services, and during the pandemic have even led them. I have completed vocational programs, becoming certified in many new fields.
As a result, I now have a Minimum PATTERN Score, a system the BoP uses to rank the likelihood of my recidivism. I am a Minimum Security Classification. I was granted "Community Custody," the lowest classification in the BoP, in Alabama and was permitted to work in the community for months with no incidents. All inmates at the Camp are classified as "Out Custody." The Town Drivers are the only two men at the Camp who hold "Community Custody" classification and are permitted daily to drive men to and from appointments and to their release points in the community unsupervised. In December 2019, I was driven to the New Jersey Department of Motor Vehicles to have my Driver's License renewed so that I could become a Town Driver and be granted that level of trust by the administration of Fort Dix. See Exhibits.

There can be no argument that the Bureau of Prisons, an agency of the Department of Justice, of which the office of the United States Attorney is also a part, recognizes that I represent no danger to the safety of any other person or the community.

## CONCLUSION

The Government spends a lot of ink recounting the circumstances of my criminal conviction and my history, however, they offer nothing new to the Court. Neither do they mention that this is the first time I have spent any time in prison.

The Court must weigh the the seriousness of my crime, which I acknowledge, against the realities of the current circumstances of my incarceration.  Added to that calculation, the court must consider the raging outbreak at both Fort Dix and the Camp; my medical condition and the CDC recognized chance that my reinfection may result in serious, even deadly, complications; my sincere attempts to comport myself as a model inmate during the entirety of the last nine years; and, the recognition by the BoP of my readiness to rejoin my community.

I pray the Court grants my Motion, and gives me the opportunity to pay my debt to society free from the ongoing threat to my life that continued incarceration at Fort Dix poses.

For the foregoing reasons, I ask that this Court grant my Motion for Compassionate Release.

Respectfully submitted,

Louis N. Gallo III

E X H I B I T S




180488675

EXAMINATION PERMIT

G0302 48875 04692     CLASS D AUTO
GALLO 3RD     ENDR:
LOUIS NEIL
11 JANSEN LANE
WAYNE     NJ   07470

| | |
|---|---|
| DOB: 04/23/1969 | EXPIRES: 03/19/2020 |
| ISSUED: 12/20/2019 | EYES: BRN |
| HT: 5-10 | KL HH20193540200 |
| FEE: 10.00 (K) | ADDC   GENDER: M |

NOT VALID FOR PRACTICE
DRIVING UNTIL OFFICIALLY
STAMPED ON REVERSE SIDE



CERTIFICATE NOT ISSUED

KL HH201935400000200



NEW JERSEY Motor Vehicle Commission
FOR IDENTIFICATION ONLY
NOT FOR "REAL ID" PURPOSES
G0302 48875 04692
DOB 04-23-1969
ISS 12-20-2019   EXP 04-23-2023
GALLO 3RD
LOUIS NEIL
11 JANSEN LANE
WAYNE, NJ 07470
RESTR NONE
SEX M   HGT 5'-10"   BRN
KL HH201935400000204   U---   24.00

U.S. Department of Justice
Federal Bureau of Prisons

BP-251(42)
JAN. 1987

INMATE'S PHOTO

USP LVN

FCI FORT DIX
Institution

**INMATE DRIVER'S PERMIT**
and Identification Card

GALLO     26960-050
(Name)     (Number)

This inmate is authorized to drive
a CAR, TRUCK, VAN
STAKEBED, STEPVAN

GOOD ONLY ON THE RESERVATION

Approved _____ George Foreman
                   Associate Warden
Previous editions not usable



scribd.com
Case 1:12-cr-20630-JAL Document 497 Entered on FLSD Docket 01/26/2021 Page 8 of 11
SCRIBD     1   of 2    Search document

# Congress of the United States
## Washington, DC 20515

January 15, 2021

The Honorable Michael E. Horowitz
Inspector General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Inspector General Horowitz,

We write today to thank you for your oversight of the Bureau of Prisons (BOP) to date during the COVID-19 pandemic, and to urge you to expand your ongoing investigations to include Federal Correctional Institute (FCI) Fort Dix. Earlier this week FCI Fort Dix once again had the most severe COVID-19 outbreak of all federal prisons, and we are alarmed that BOP has repeatedly failed to contain outbreaks at the facility. Additional oversight is urgently required to protect the safety of incarcerated individuals and staff at FCI Fort Dix.

More than 300 incarcerated individuals and 29 staff members at FCI Fort Dix have active COVID-19 cases.[1] This is not the first severe outbreak at the facility, as FCI Fort Dix has faced several waves of COVID-19 infections in recent months. BOP reports that nearly 1,100 incarcerated individuals and 45 staff members at FCI Fort Dix have recovered from the virus, which means that in total more than half of the incarcerated population at the facility has been infected with COVID-19 to date.[2] Even still, these figures may not capture the full picture of COVID-19 infections due to the lack of consistent and universal testing at FCI Fort Dix. In short, BOP has had ten months to learn how to protect the incarcerated individuals and staff at FCI Fort Dix during this pandemic, and has failed.

In response to the outbreaks at FCI Fort Dix, as Members of New Jersey's congressional delegation we have repeatedly called on BOP to improve its strategies for testing and infection control at the facility, including via letters sent to the BOP Director on November 9, 2020 and December 8, 2020. In response, BOP has continued to insist that the situation at FCI Fort Dix is under control. In his response letter dated December 16, 2020, BOP Director Michael Carvajal noted that "the efficacy of the Bureau's mitigation strategies can be seen in the very low number of hospitalized inmates." However, the recent surge in COVID-19 cases at the facility indicates that the BOP's mitigation strategies at FCI Fort Dix are not working. We have also heard reports from constituents with incarcerated family members that BOP is failing to provide sufficient medical care, and that living conditions inside the facility have steeply deteriorated.

In light of the concerns described above, we urge you to immediately investigate the COVID-19 response at FCI Fort Dix, including infection control and testing procedures, access to medical care, impacts on living conditions, and transfers to home confinement. We are gravely

---

[1] https://www.bop.gov/coronavirus/
[2] https://www.bop.gov/locations/institutions/ftd/

concerned that without additional oversight, BOP will continue to endanger the lives of the incarcerated individuals and staff at FCI Fort Dix. Thank you for your consideration of this urgent matter, and we look forward to your prompt reply.

Sincerely,

Robert Menendez  
United States Senator

Cory A. Booker  
United States Senator

Andy Kim  
Member of Congress

Frank Pallone, Jr.  
Member of Congress

Bill Pascrell, Jr.  
Member of Congress

Donald M. Payne, Jr.  
Member of Congress

Donald Norcross  
Member of Congress

Bonnie Watson Coleman  
Member of Congress

Josh Gottheimer  
Member of Congress

Mikie Sherrill  
Member of Congress

**From:**
LOUIS N. GALLO III
#26960-050
Federal Correctional Inst
Camp / P.O. Box 2000
Fort Dix, N.J.   ZIP 08640

**To:**
United States District
Court Southern Florida
Wilkie D. Ferguson, Jr.
Courthouse
400 N. Miami Ave.
Rm # 12-1
Miami, FL.   ZIP 33128
ATT: Judge Joan A. Lenard

---

$7.80 US POSTAGE
FIRST-CLASS
Jan 19 2021
Mailed from ZIP 08753
3 oz First-Class Mail Flats Rate
10590464

FIRST-CLASS MAIL

Federal Correctional Inst Ca
Louis N Gallo #26960-050
PO BOX 2000
FORT DIX NJ 08640

RETURN RECEIPT REQUESTED

U.S.M.S. INSPECTED BY:

SHIP TO:
Wilkie D. Ferguson Jr.
United States District Court Southern Florida
400 N MIAMI AVE RM 12-1
ATTN: JUDGE JOAN A LENARD
MIAMI FL 33128-1810

USPS CERTIFIED MAIL

9414 7111 0803 6892 632

UNITED STATES POSTAL SERVICE

**CERTIFIED MAIL**
FOR USE ONLY WITH IMpb SHIPPING LABEL

Label 3800-N, January 2014    PSN 7690-17-0

